R. T. MYERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EVA L. MYERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15154, 15162.   Promulgated September 28, 1948.

*Thomas Y. Banks, Esq.*, for the petitioners.
*John P. Higgins, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: The questions for decision involved in issues 1, 2, 4, 5 and 6, have been decided in our findings of fact stated under each issue.

Any discussion of the long and tedious record made at the hearing upon these issues would be unnecessary and unprofitable. We content ourselves with three observations. First, as to the issues which we have decided in favor of petitioners, and the amounts thereof, petitioners have borne the burden of proof by the narrowest of margins. Second, as to issue No. 6, we have been unable to discover any basis whatsoever to petitioners' contention. Third, for this tribunal to spend many hours refereeing, in effect, an impromptu audit of three partnerships is a waste of its time and is to be deprecated.

Upon issue No. 3, involving the computation of income derived by the partnership of Richards, Holloway & Myers from the so-called Swindler contract, petitioners argue that, while the figures used by respondent are correct, the method used by the partnership in its return for the computation of taxable income is correct in that the amounts expended by it as the cost of drilling and equipping the wells called for under this contract should be deducted as ordinary and necessary business expenses from any moneys actually received on account of the contract during the taxable years, and the remainder, if any, would constitute the taxable income for the year resulting from this contract. Respondent contends, in line with his determination, that the partnership obtained by virtue of this contract an oil payment of $52,000 at a cost of $27,362.06, representing the cost of drilling the wells; that the partnership thereby obtained a depletable interest in oil in place; that the cost of this oil payment should be capitalized; and that, after allowing cost depletion, the partnership realized taxable income to the extent of 47.38 per cent of the receipts under this contract.

In answer to respondent's contention, petitioners argue that under the contract there was no assignment to the partnership of an interest in the oil and gas leasehold estate or in the oil in place, and, therefore pursuant to our decision in *F. H. E. Oil Co.*, 41 B. T. A. 130, there was not an acquisition of a capital asset, and the taxable income should be

computed by including in gross income the actual receipts, and allowing as deductions the disbursements on account of drilling costs. See *F. H. E. Oil Co., supra*, p. 134.

While petitioners are correct in their statement as to the holding in the *F. H. E. Oil Co.* case, this question was reconsidered by us in *T. W. Lee*, 42 B. T. A. 1217, which was decided after the opinion was handed down by the Supreme Court in *Anderson* v. *Helvering*, 310 U. S. 404, and we decided that the *F. H. E. Oil Co.* case (and other cases relied upon therein) would be no longer followed on this point. In the *Lee* case we held that an interest held under an oil payment contract was a depletable interest in oil in place, "regardless of the absence of formal words of assignment of such an interest." This decision was affirmed on appeal, 126 Fed. (2d) 825.

Petitioners also answer respondent's contention by arguing that the provision in the Swindler contract reserving to the partnership title to the material and equipment placed in the wells until the oil payment was made as to each well, constituted "additional security guaranteeing payment of the sum specified," and thus rendered the oil payment "merely a money obligation." See *T. W. Lee, supra*, p. 1227.

The record does not show with exactness the cost of material and equipment furnished by the partnership in performance of the contract by which it obtained the oil payment of $52,000, but, from the statement attached to the determination of deficiency, conceded to be accurate as to the figures, it is obvious that the cost of the material and equipment installed was less than $14,930.79, which is the cost of all the "supplies and equipment" used on the job. There is no evidence as to their fair market value. Since there is no evidence in the record as to the value of this material and equipment, and since petitioner has the burden of proof, we are unable to make any finding as to this value, or to conclude that it was of any substance.

The retention of an interest in certain material and equipment furnished under the contract, which had an unknown, and, so far as the record discloses, an unsubstantial value, and a cost considerably less than the cost of the contract, might assure the partnership of a recoupment of an unknown part of its cost if the operation proved unsuccessful, or might have served to reduce in an unknown amount its loss; but it could, in no realistic sense, be considered as "additional security guaranteeing the payment of the sum specified," i. e., the oil payment of $52,000, to the extent that it was thereby rendered a money obligation in that amount.

On this issue, pursuant to the authority of *T. W. Lee, supra*, we decide in favor of respondent.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*